IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:24-CR-127-D-RJ-1

| | | |
|---|---|---|
| UNITES STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | DEFENDANT'S SENTENCING |
| | ) | MEMORANDUM AND MOTION |
| GROTEZ SIMPSON, | ) | FOR A DOWNWARD VARIANCE |
| Defendant. | ) | |

Defendant Grotez Simpson, through counsel, hereby respectfully submits the following sentencing memorandum and motion for a downward variance pursuant to 18 U.S.C. § 3553(a).

## I. Defendant's Objections to the Presentence Report

### A. Substantial Disruption

The PSR states in paragraphs nine and eleven that the offense resulted in a substantial disruption of public, governmental, or business functions or services, and the PSR applies a four-level increase in the offense level for the same in paragraph fifty two. While Mr. Simpson takes full responsibility for the fact that there was a disruption, he objects to the PSR's conclusion that the disruption was substantial.

The train in this case was delayed for approximately four and a half hours in Florida and delayed again for a short amount of time in Raleigh. A delay of slightly less than five hours to public transportation is certainly disruptive, but it is not abnormal or substantial. In the third quarter of 2023, the Silver Star route was on time only 48.5% of the time and had more than 45,000 minutes of delay—just in three months. Federal Railroad Administration, *Quarterly Report on the Performance and Service Quality of Intercity Passenger Train Operations* at 28, 37, https://railroads.dot.gov/sites/fra.dot.gov/files/2023-

09/DOT_FRA_MetricsStandards_FY23Q3_092023_PDFa.pdf. The frequent problem of Amtrak train delays has been widely reported. *See* Christopher Elliott, *America's Train System Doesn't Favor You: Here Is Who to Blame, How to Begin Fixing It*, USA Today, Oct. 13, 2023, https://www.usatoday.com/story/travel/columnist/2023/10/13/late-trains-american-fix/71142316007/ ("'One of the conductors told me that being twelve hours late is perfectly normal,' said [Alan] Gore, a photographer who lives in Sedona, Arizona. 'I didn't even bother asking for compensation.'").

In other cases that have applied a four-level enhancement for a substantial disruption, the disruption to government or business services was something far out of the ordinary. *See, e.g., United States v. Mohamed*, 459 F.3d 979, 982 (9th Cir. 2006) (upholding a finding of a substantial disruption where a bomb threat shut down a shopping mall, required "substantial resources" from seven different law enforcement agencies, and affected "thousands of people"); *United States v. Anwar*, 741 F.3d 1134, 1135, 1139 (10th Cir. 2013) (upholding a finding of a substantial disruption where a threat shut down a university building, "caused the evacuation of 240 people and the interruption of 14 classes" on an exam day, and required two days of investigation by police and firefighters). While a train delay is a disruption, Mr. Simpson objects to the conclusion that it is a substantial disruption, given that it happens regularly.

### B. Obstruction of Justice

The PSR states in paragraph nine that Mr. Simson "attempted to obstruct justice by utilizing a phone application that allows the user to disguise their true phone number and deleting the application from his phone." The PSR applies a two-level upward adjustment for obstruction of justice in paragraph fifty-five. Mr. Simpson objects to the conclusion that the deletion of the application amounts to obstruction of justice.

Mr. Simpson downloaded the Text Now application on May 23, 2022. Text Now is a free phone application that allows users to make calls, send text messages, and use wireless data by either transferring an existing phone number or receiving a new, free phone number. Text Now is often used as an alternative to paying for phone service. Mr. Simpson downloaded the application and received a phone number from Text Now because he did not otherwise have a cell phone plan from another carrier. He did not use Text Now to conceal a different phone number; he had no other numbers at the time. He used Text Now because it was a free and easily available way to get phone service while he travelled from Miami to New York. He used his usual email address to register for the account, and he was identified by law enforcement because the same email address was associated with his Amtrak ticket. Mr. Simpson objects to the PSR's assertion that he obstructed justice "by utilizing a phone application that allows the user to disguise their true phone number" because he did not use Text Now to disguise another number, nor did he otherwise try to hide his identity.

Next, Mr. Simpson objects to paragraph nine's assertion that he obstructed justice by deleting the application from his phone. Mr. Simpson deleted the application on May 26, 2022 at 8:28 am, five minutes after he sent the final text message to the Amtrak Police Department. He deleted the application because he did not want to send more messages, and he had to stop himself from doing so. He did not think—nor would any reasonable person think—that deleting the application would hide his identity (for if police were to search his phone, which they later did, they would have already identified him, as they did) or erase the messages (for those texts were sent from Mr. Simpson directly to law enforcement).

In *United States v. Katakis*, the Ninth Circuit expressed concern with expanding the meaning of "concealment" in a digital context. 800 F.3d 1017, 1030 (9th Cir. 2015). The Court

found no obstruction of justice where the defendant deleted emails, which merely moved them from one folder to another, because "[a]ctual concealment must do more than merely inconvenience a reasonable investigator—there must be some likelihood that the item will not be found." *Id.* Here, deleting the application did even less than move the text messages from one folder to another. The text messages were still stored in the same place by Text Now and they were still visible by Amtrak Police, the recipient of the messages; they were merely no longer visible on Mr. Simpson's device. Additionally, Mr. Simpon's identity was still readily proven by his account with Text Now, which he did not delete or change. In the digital context, there was no actual concealment by deleting the application, nor was there any intent to conceal evidence—it merely made the messages unviewable on Mr. Simpson's phone, unless or until the application was re-downloaded. Deleting the application was only intended by Mr. Simpson to stop himself from sending more messages. Accordingly, Mr. Simpson objects to the upward adjustment for obstruction of justice.

### C. Inconsistent Accounts of Mr. Simpson's Mother's Death

Footnote four in paragraph thirty-two states that "[a]ccording to records from the Northern District of Ohio, Simpson reported his mother was killed while walking home from a store when she was caught in the crossfire of a drive-by shooting." In the body of paragraph thirty-two, the PSR summarizes Mr. Simpson's statements in his interview in this District that his mother was killed in his presence during a home invasion in 2009 and her body was burned. Mr. Simpson does not know why the Northern District of Ohio recorded that he reported an alternate account. He does not remember stating that his mother died in a drive-by shooting, and he reaffirms that she died in a home invasion while he was present. Mr. Simpson objects to any implication that he was untruthful in recounting in his mother's death.

## II. Defendant's Motion for a Downward Variance Pursuant to 18 U.S.C. § 3553(a)

Mr. Simpson moves for a downward variance in consideration of his history and characteristics and the need for the sentence to afford adequate deterrence to criminal conduct.

### A. Mr. Simpson's History and Characteristics

Mr. Simpson experienced a great amount of instability and abuse as a child, and he recognizes that his childhood trauma contributed to the mental health and substance abuse issues that led to the instant offense. He had a relatively happy early childhood living with his mother and stepfather, but tragically, his stepfather passed away from cancer when Mr. Simpson was approximately seven years old. A year later, Mr. Simpson's mother was brutally murdered during a home invasion, and her body was burned. Mr. Simpson was present, and the trauma of his mother's murder will always haunt him.

After losing their stepfather and mother, Mr. Simpson and his siblings lived with their maternal grandmother. She abused alcohol and cocaine, and she was abusive to Mr. Simpson, particularly regarding his sexual orientation. When he expressed any femininity, his grandmother was extremely harsh with him, including hitting him and spitting on him.

The family moved back and forth from New York to Missouri several times, so Mr. Simpson had difficulty putting down roots. When he was in New York, Mr. Simpson sometimes stayed with his biological father, who was also abusive. Notably, his father once hit him in the head with a crowbar because Mr. Simpson displayed feminine behavior at age eleven. Mr. Simpson was hospitalized for that injury and has not spoken with his father since. Mr. Simpson recalls using liquor and cocaine daily around the time he was eleven years old to cope with the abuse.

When Mr. Simpson was fourteen years old, his grandmother's brother forced him to have intercourse with a woman in order to convert him to being straight. Mr. Simpson became a father at age fourteen, but tragically, his child passed away from SIDS.

In approximately 2017, Mr. Simpson's younger brother was removed from their grandmother's care by Child Protective Services, and Mr. Simpson went to live in a group home in Missouri. He was diagnosed with Asperger's Syndrome, post-traumatic stress disorder, and depression. Throughout his childhood, he attempted suicide many times, with the most recent attempt being in 2021.

As a young adult, Mr. Simpson has lived in Missouri, Ohio, and Michigan. He has family in New York, and his sister lives in Iowa. Given the instability of his childhood and young adulthood, it is not surprising that in 2022 at age twenty-two, he had no permanent residence and was travelling by train from Florida to New York. Additionally, given his early exposure to controlled substances, it is also not surprising that he struggled with addiction in early adulthood, which directly led to the instant offense.

### B. The Need for Deterrence

Mr. Simpson committed this offense because he was impaired and not in his right mind, and identifying the cause of his behavior is the first step in ensuring that he never returns to it. Mr. Simpson has been incarcerated since this offense occurred in 2022, though the indictment was filed in 2024; he spent the interim two years in prison in Michigan. In that time, Mr. Simpson has remained sober and has completed substance abuse classes. While in pretrial detention for the instant offense at the Bladen County Jail, Mr. Simpson has continued taking classes. *See* Exhibit 1 (Transcript). He is absolutely committed to maintaining his hard-earned sobriety once he is released.

Although Mr. Simpson's Michigan sentence would not be credited towards this case, the now two and a half years of incarceration did serve to deter him from committing another offense. In consideration of imposing a sentence that is sufficient but not greater than necessary to ensure Mr. Simpson's continued sobriety and deterrence, he asks the Court to consider the two and a half years he has already spent sober and incarcerated, and he asks the Court to sentence him below his Guidelines range.

Respectfully submitted this the 14th day of October, 2024.

/s/ Monique Kreisman
Monique Kreisman
Attorney for Defendant
N.C. Bar No. 53519
Kreisman Law Firm
226 North Front Street Suite 196
Wilmington, NC 28401
(910) 632-0814

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Sentencing Memorandum was filed with the clerk of court using the CM/ECF system, which will send notice of such filing to all CM/ECF users who have made an appearance in the case, including:

>Logan Liles
>Assistant United States Attorney
>Eastern District of North Carolina
>150 Fayetteville St. Suite 2100
>Raleigh, NC 27601
>Logan.Liles@usdoj.gov

This the 14th day of October, 2024.

>/s/ Monique Kreisman
>Monique Kreisman
>Attorney for Defendant
>N.C. Bar No. 53519
>Kreisman Law Firm
>226 North Front Street Suite 196
>Wilmington, NC 28401
>(910) 632-0814